## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    BKY 17-43661-MER

Barbara Ann Thomas,                                       Chapter 7

                    Debtor.

---

## MEMORANDUM DECISION

---

At Minneapolis, Minnesota, July 31, 2018.

Barbara Ann Thomas, the debtor, stepped into chapter 7 of the Bankruptcy Code[1] on

November 30, 2017.  ECF No. 1.  She is represented by Andrew C. Walker.  Originally, the debtor

claimed one of her largest assets–homestead proceeds in the amount of $51,860.00–as exempt,

under MINN. STAT. §§ 510.01 and 510.02.  Id. at 17.  The sale of the debtor's homestead occurred

pre-petition, on October 31, 2017.  The trustee, Nauni J. Manty, represented by Mary F. Sieling,

objected to the debtor's claims of exemptions.  ECF No. 11.  The objection said, "[i]f the debtor

amends to exempt the proceeds under Minn. Stat. § 510.07, the trustee objects to the extent the

Homestead Proceeds remain in the debtor's possession or control one-year after sale of her

homestead."  Id. at 3.  The debtor did just that.  ECF No. 16 at 9.  The trustee's objection persisted.

See Loc. R. Bankr. P. (D. Minn.) 4003-1 ("If an amendment to a claim of exemption is filed after an

objection has been filed, the objection shall be deemed an objection to the amended claim of

exemption.").  The debtor, however, gave enough documentation to the trustee to resolve

$14,000.00 of the objection.  ECF No. 35.  Thus, the Court will assess interconnected and

overlaying law to determine whether to sustain or overrule the objection to the debtor's claim of

exemption.

---

[1] All statutory references in this opinion to the Bankruptcy Code are to the specified provision
within 11 U.S.C. §§ 101-1532.

This memorandum decision constitutes the Court's findings of facts and conclusions of law under FED. R. BANKR. P. 7052, made applicable through FED. R. BANKR. P. 9014. The Court has jurisdiction here through 28 U.S.C. §§ 1334 and 157. This matter qualifies as a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### Taking a Snapshot: Property of the Estate in a Chapter 7

Filing a petition with the bankruptcy court creates an estate "comprised of all legal or equitable interests of the debtor in property *as of the commencement* of the case." 11 U.S.C. § 541(a)(1) (emphasis added). In chapter 7, the bankruptcy estate fails to absorb post-petition earnings from services performed by the debtor, as would otherwise happen in chapters 11, 12, and 13. 11 U.S.C. §§ 1115(a)(2), 1207(a)(2), 1306(a)(2). Thus, a bankruptcy estate in chapter 7 calibrates more to interests as of the start of the case. That is not to say, however, that a bankruptcy estate in chapter 7 is set in stone. See 11 U.S.C. § 541(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7).

Indeed, the shape of the bankruptcy estate can take different forms when exemptions come into play. Minnesota allows debtors to choose to exempt property: (1) under federal exemptions in 11 U.S.C. § 522(d), or (2) under state and non-bankruptcy federal exemptions, but not both schemes. Here, the debtor chose the latter. Once properly exempted, that property interest departs from the bankruptcy estate. Owen v. Owen, 500 U.S. 305, 308 (1991) ("An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor."). Section 522(c) of the Bankruptcy Code, in turn, safeguards exempt property from pre-petition debt, with some exceptions detailed in its subdivision (c), or if the case gets dismissed. 11 U.S.C. § 522(c) ("Unless the case is dismissed, *property exempted* under this section *is not liable during or after the case for any debt of the debtor that arose*, or that is determined under section 502 of this title as if such debt had arisen, *before the commencement of the case* . . . .) (emphasis added). Exemptions help facilitate one of the

2

Bankruptcy Code's coveted aims: providing a "fresh start" to debtors.  In re O'Sullivan, 841 F.3d 786, 788 (8th Cir. 2016).

The law binds exemptions to "the facts and circumstances as they exist on the date of filing . . . ."  In re Peterson, 897 F.2d 935 (8th Cir. 1990) (supporting this view by "precedent, Bankruptcy Rule 1016, logic, and policy considerations[,]" namely, the fresh-start policy).  Though, not so for after-acquired interests under 11 U.S.C. § 541(a)(5), which is determined when that property gets absorbed by the bankruptcy estate.  See In re Walz, 546 B.R. 836, 840 (Bankr. D. Minn. 2016); FED. R. BANKR. P. 1007(h).  Nevertheless, "[t]he principle that exemptions are determined as of the date of the petition was stated long ago in White v. Stump, 266 U.S. 310 (1924) . . . ."  Id. at 838.  "Snapshot rule" and "snapshot approach" have come to describe this principle.  See In re William, 515 B.R. 395, 401 (Bankr. D. Mass. 2014) ("This focus on the facts and law as they exist on the petition date is commonly referred to as the 'snapshot' approach (or rule) and often adopts the vernacular that exemptions become 'fixed' on that date.").

### Interpreting MINN. STAT. § 510.07 in a Chapter 7

A court must apply state law when a debtor chooses to exempt property under a state statute.  In re Mueller, 215 B.R. 1018, 1023 (B.A.P. 8th Cir. 1998).  As the title of MINN. STAT. § 645.16 clearly states, "[l]egislative intent controls" the interpretation and construction of Minnesota Statutes.  See Hyland v. Metro. Airports Comm'n, 538 N.W. 2d 717, 720 (Minn. Ct. App. 1995) (reciting that a statutory title can serve as a consideration of not decisive significance to ascertain legislative intent).  The content of MINN. STAT. § 645.16 lives up to that title: "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." MINN. STAT. § 645.16.  To extract the intent of the legislature, "we give words and phrases their plain and ordinary meaning."  Premier Bank v. Becker Dev., LLC, 785 N.W.2d 753, 759 (Minn. 2010) (citing MINN. STAT. § 645.08).  When the language of a statute is unambiguous, the Court

"must apply the statute's plain meaning." Larson v. State, 790 N.W.2d 700, 703 (Minn. 2010); see also, MINN. STAT. § 645.16. This interpretive casting molded in part by the shared call of both state law and federal law to construe homestead exemption statutes in favor of the debtor. See In re Johnson, 509 B.R. 213, 216 (B.A.P. 8th Cir. 2014) ("exemption statutes must be construed liberally in favor of the debtor and in light of the purposes of the exemption."); Title Ins. Co. of Minn. v. Agora Leases, Inc., 320 N.W.2d 884, 885 (Minn. 1982) ("Minn. Stat. §§ 510.01-.09 (1980) govern the exemption of homestead property from liability for debts. We have consistently construed these provisions liberally in favor of the debtor due to their constitutional roots and the strong social policy of securing the home against the uncertainties and misfortunes of life." (citation and footnotes omitted)). Now, the Court turns to MINN. STAT. § 510.07.

Section 510.07 of the Minnesota Statutes states in part,

> *The owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in the owner's hands*, except that the proceeds of the sale are not exempt from a judgment or debt for a court ordered child support or maintenance obligation in arrears.

MINN. STAT. § 510.07 (emphasis added). Even though the intent behind MINN. STAT. § 510.07 is "to conserve the proceeds . . . for the purchase or improvement" of another homestead, the Supreme Court of Minnesota cautioned that "no such limitation is contained in the statute and we are not at liberty to read one in." O'Brien v. Johnson, 148 N.W.2d 357, 361 (Minn. 1967). Thus, the Court cannot blur the inescapable clarity of the language by ruling a result that does not flow from the operation of the language. The proceeds of a sale of a homestead are exempt for a period of one year after the sale. See In re Mueller, 215 B.R. 1018, 1024 (B.A.P. 8th Cir. 1998) ("Of additional import in this appeal is Minnesota Statute § 510.07, which excepts from creditors' levy the proceeds from the sale of a homestead for a period of one year after such sale.").

Courts, with no binding authority upon this Court, have confronted other relatively ephemeral exemption statutes. E.g., Lowe v. DeBerry (In re DeBerry), 884 F.3d 526 (5th Cir. 2018)

(holding that a chapter 7 debtor's Texas homestead exemption would not evaporate if proceeds from post-petition homestead sale were not reinvested in another homestead within six months); Hawk v. Engelhart (In re Hawk), 871 F.3d 287 (5th Cir. 2017) (deciding in a chapter 7 that, under Texas law, funds withdrawn post-petition from an exempt retirement fund maintain their exempt status even when not deposited in another retirement account within 60 days); Wolfe v. Jacobson (In re Wolfe), 676 F.3d 1193 (9th Cir. 2012) (ruling, under California law, that exemption ends when proceeds from post-petition sale of homestead were not reinvested in a new homestead within six months); In re Awayda, 574 B.R. 692, 701 (Bankr. C.D. Ill. 2017) (holding, under Illinois law, that although exemption on homestead proceeds lasts one year, an intervening bankruptcy case entitles the debtor to "unconditionally claim her homestead proceeds exempt."); In re Williams, 515 B.R. 395 (Bankr. D. Mass. 2014) (determining that a chapter 7 bankruptcy will not prevent an exemption on homestead proceeds from lapsing under Massachusetts law); In re Stewart, 452 B.R. 726 (Bankr. C.D. Ill. 2011) (holding under Illinois law that exemption on homestead proceeds should be denied if the proceeds are not reinvested within one year); In re Lantz, 446 B.R. 850 (Bankr. N.D. Ill. 2011) (upholding the debtor's claim of exemption on proceeds from homestead sale despite the exemption period lapsing post-petition under Illinois law); In re Snowden, 386 B.R. 730, 734 (Bankr. C.D. Ill. 2008) (although the Illinois exemption statute contains a one-year limitation on exempting proceeds, "this Court will not read into the law that, if a debtor no longer qualifies for an exemption in certain property after filing, the Trustee may then administer that property as though it had never been exempt."). The clashing views of the trustee and the debtor stand on divergent plates. Compare DeBerry, 884 at 528 ("But if that debtor who sold the house prepetition does not use the proceeds to obtain a new homestead within six months, the funds become part of the estate." (citing Zibman v. Tow (In re Zibman), 268 F.3d 298, 305 (5th Cir. 2001)), with In re Lantz, 446 B.R. 850, and In re Snowden, 386 B.R. 730. None of these cases, though, bind this Court.

5

So, what impact does this chapter 7 case place upon the one-year temporal limitation of MINN. STAT. § 510.07? The answer depends through which viewfinder the Court looks through to capture the debtor's exemption.

Some courts would view the "snapshot rule" to determine an exemption "in terms of the exact scope of the rights it confers at the time of the bankruptcy petition." In re Jacobson, 676 F.3d 1193, 1199 (9th Cir. 2012). Those courts would understand that once the one-year temporal limitation of MINN. STAT. § 510.07 runs its course, the property would lose exempt status, and return as property of the estate. In other words, before the time limit lapses, exempt homestead proceeds under MINN. STAT. § 510.07 would have one foot in and the other out of the bankruptcy estate's "door." But once one year lapses, the homestead proceeds would have both feet in the bankruptcy estate, which would result in a loss of exempt status.

This Court aligns itself with those courts that have examined the "snapshot rule" based on circumstances in existence as of the petition date to determine the lifespan of exemptions in a chapter 7 case. See Awayda, 574 B.R. 692. They would take that to mean that generally what happens "after filing should not impact on the entitlement to an exemption properly claimed at filing." Snowden, 386 B.R. at 734 (citation omitted). Aptly put: "The Bankruptcy Code does not 'change' the state exemption in homestead proceeds into a 'permanent' exemption one, since the exemption for bankruptcy purposes only affects pre-petition creditors." Lantz, 446 B.R. at 859. Once the homestead proceeds became exempt, they were shown the "exit door" out of the bankruptcy estate. Indeed, viewing otherwise would dim the protection of § 522(c) on exempt property from pre-petition creditors. Thus, the Court finds this reasoning more persuasive, which will dictate the result of the pending objection, accordingly.

**Conclusion**

Based on the above, the debtor is entitled to claim her homestead proceeds as exempt under MINN. STAT. § 510.07.

ACCORDINGLY, IT IS ORDERED:

1. The trustee's objection to the debtor's claimed exemption is **OVERRULED**.

2. The debtor's claimed exemption in the amount of $51,860.00[2] is **ALLOWED**.

*/e/ Michael E. Ridgway*

United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *07/31/2018*
Lori Vosejpka, Clerk, by MJS

---

[2] The allowed amount includes the $14,000.00 that the trustee originally objected to, but later resolved.

7